UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | } |
| v. | } Case No.: 1:24-cr-00186-RDP-SGC |
| KELVONTAE RASHAD WALLACE | } |
| Defendant. | } |

### MEMORANDUM OPINION & ORDER

This matter is before the court on the Motion to Dismiss the Indictment Pursuant to the Second Amendment. (Doc. # 25). The Motion is fully briefed. (Docs. # 25, 27, 28). For the reasons discussed below, the Motion (Doc. # 25) is due to be denied.

**I.    Background**

On December 15, 2023, Kelvontae Rashad Wallace ("Defendant") allegedly assaulted another man by shooting him with a firearm at a gas station. (*See* Doc. # 25 at 1). A judge in the District Court of Talladega County, Alabama, issued a warrant for Defendant's arrest. (*Id.*). On January 2, 2024, law enforcement arrived at Defendant's residence to execute the arrest warrant and observed a Century Arms pistol in Defendant's residence. (*Id.*).

On May 30, 2024, a grand jury sitting in the Northern District of Alabama returned a four-count indictment against Defendant. (Doc. # 1). Counts One and Four of the Indictment charge Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*Id.* at 1-2, 3-4). The Government contends that at the time of his arrest, Defendant had been convicted of the offenses of Discharging a Gun into an Occupied Building or Vehicle and Assault, Second Degree, each of which is an offense punishable by imprisonment for a term exceeding one year.

(*Id.*). On June 11, 2024, Defendant appeared before the Honorable Judge Staci G. Cornelius where he was advised of his rights and the charge against him. (Minute Entry, June 11, 2024).

Defendant filed this Motion to Dismiss (Doc. # 25) on February 11, 2025, asserting that pursuant to 18 U.S.C. § 922(g)(1) his indictment is unconstitutional on its face because it does not comport with the Nation's history and tradition of firearms regulations. (*Id.* at 1 (citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), *United States v. Rahimi*, 144 S. Ct. 1889 (2024))). Although there is Eleventh Circuit precedent holding that § 922(g)(1) is constitutional, *see United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), *United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024), Defendant highlights that the Supreme Court recently issued a grant, vacate, and remand ("GVR") of the judgment in *Dubois* (as well as in two other cases) for further consideration in light of *Rahimi*. 2025 WL 76413 (*Dubois*); 145 S. Ct. 430 (Mem.) (*United States v. Kirby*, 2024 WL 2846679 (11th Cir. June 5, 2024); 145 S. Ct. 432 (Mem.) (*United States v. Jones*, 2024 WL 1554865 (11th Cir. Apr. 10, 2024)).

The court ordered the parties to file a joint report explaining what effect the Supreme Court's GVR of *Dubois*, *Kirby*, and *Jones* should have on this matter, and whether the court should stay this case and await any Eleventh Circuit's decision. The parties did so (Doc. # 30), stating that "[t]he parties agree that a stay is unnecessary and requests that this Court enter an order on Mr. Wallace's Motion to Dismiss." (Doc. # 30 at 1). In addition, Defendant argues that "the [GVR] of *Dubois, Kirby,* and *Jones* stands for the proposition that the Court should not rely on pre-*Bruen* and *Rahimi* Eleventh Circuit precedent upholding the constitutionality of [§] 922(g)(1) in ruling on Mr. Wallace's motion to dismiss." (*Id.* at 2). The Government argues that despite the recent GVRs, the court is still bound by *Rozier* because GVRs by themselves do not change the prior panel precedent. (*Id.* at 2-3). Additionally, the Government argues, multiple cases in other circuits

have held that a GVR is not a ruling on the merits that could abrogate or overturn prior panel precedent. (*Id.* at 3-4).

## II.     Legal Standard

Federal Rule of Criminal Procedure 12 allows a defendant to bring a pretrial motion challenging a criminal indictment. Fed. R. Crim. P. 12(b)(3). A court may dismiss a criminal indictment that is legally insufficient. *See* Fed. R. Crim. P. 12(b)(3)(B); *United States v. Durrett*, 524 F. App'x 492, 494 (11th Cir. 2013) (per curiam); *United States v. Schmitz*, 634 F.3d 1247, 1260 (11th Cir. 2011); *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). An indictment is defective if it alleges a violation of an unconstitutional statute. *United States v. Brown*, 715 F. Supp. 2d 688, 689-90 (E.D. Va. 2010); *see The Civil Rights Cases*, 109 U.S. 3, 8-9 (1883).

## III.    Discussion

Defendant moves to dismiss the Indictment, arguing that § 922(g)(1) is unconstitutional on its face because it violates the Second Amendment right to keep and bear arms. (Doc. # 25). To support this argument, Defendant relies primarily on the Supreme Court's decisions in *United States v. Rahimi*, 602 U.S. 680, 690 (2024), *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10 (2022), and *District of Columbia v. Heller*, 554 U.S. 570, 629-30 (2008).

Initially, the court notes that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Defendant's facial challenge to § 922(g)(1) fails because binding Eleventh Circuit precedent forecloses this argument, and this precedent has not in any way been clearly abrogated

3

or overruled by an en banc panel of the Eleventh Circuit, despite the recent GVRs of binding Eleventh Circuit precedent in the light of *Rahimi*.

In *United States v. Rozier*, the Eleventh Circuit rejected a Second Amendment challenge to § 922(g)(1). 598 F.3d 768 (11th Cir. 2010) (per curiam). In doing so, the *Rozier* panel cited the Supreme Court's clear admonition in *District of Columbia v. Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." *Id.* at 771 (quoting *Heller*, 554 U.S. at 626). As our Circuit reasoned, "[t]his language suggests that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment" and concluded that § 922(g)(1) is constitutional. *Rozier*, 598 F.3d at 771. Thus, the success of Defendant's argument hinges on whether this court is still bound by *Rozier* in the light of the Supreme Court's recent decisions in *Bruen* and *Rahimi*.

Under the prior panel precedent rule, an Eleventh Circuit holding is binding "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by [the Eleventh Circuit] sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). Before a district court may conclude that Eleventh Circuit precedent has been abrogated, it must apply a stringent test. As the panel in *Dubois* noted, "[t]o abrogate a prior-panel precedent, the later Supreme Court decision must demolish and eviscerate each of its fundamental props." *Dubois*, 94 F.4th at 1293 (quoting *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1223 (11th Cir. 2022)) (internal quotations omitted). To overrule Eleventh Circuit precedent, a Supreme Court ruling must be "clearly on point." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003) (per curiam); *NLRB v. Datapoint Corp.*, 642 F.2d 123, 129 (5th

4

Cir. Unit A Apr. 1981) ("Without a clearly contrary opinion of the Supreme Court or of this court sitting en banc, we cannot overrule a decision of a prior panel of this court.").[1]

Applying this standard, this court has previously held that *Rozier* remains binding precedent in this Circuit. *See United States v. Hunter*, 645 F. Supp. 3d 1247, 1254 (N.D. Ala. 2022) ("[T]he *Bruen* decision did not overrule *Rozier*, nor did it undermine that decision to the point of abrogation. Thus, because the Eleventh Circuit decided that the *Heller* dictum is persuasive, it is for the Eleventh Circuit[, not this court,] to decide whether to depart from that holding. *Rozier* is still good law, and this court must apply it. Section 922(g)(1) is constitutional."); *United States v. Oliver*, 2023 WL 7115572, at *1 (N.D. Ala. 2023); *United States v. Gilbert*, 2023 WL 4708005, at *1 (S.D. Ala. 2023) (Dubose, J.); *United States v. Woodgett*, 23-cr-00257, at 3 (N.D. Ala. Dec. 19, 2023). The Eleventh Circuit in *Dubois* also reiterated the point that *Bruen* did not abrogate *Rozier*. *See Dubois*, 94 F.4th at 1293 ("*Bruen* did not abrogate *Rozier*.").

Defendant argues that "*Bruen* and *Rahimi* undermined those precedents to the point of abrogation" because *Rozier* "does [not] comply with *Bruen* and *Rahimi*'s text-and-history methodology." (Doc. # 25 at 7). Defendant further argues that because the Supreme Court "vacated several judgments from the Eleventh Circuit and other Circuits that failed to follow *Bruen*'s history-based methodology," it "made clear that the constitutionality of firearm regulations is not settled, and that courts cannot merely rely upon pre-*Bruen* precedent to categorically conclude firearms regulations are constitutional without first undertaking a historical analysis." (*Id.* at 8-9). However, the reasoning in *Rozier* and *Dubois* controls here because the prior panel precedent rule directs this court's decision.

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981 constitute binding precedent in the Eleventh Circuit).

Neither *Bruen* nor *Rahimi* demolished or eviscerated the fundamental props of *Rozier*. *Rozier* indicated that the defendant's "Second Amendment right to bear arms is not weighed in the same manner as that of a law-abiding citizen, such as the appellant in *Heller*." *Rozier*, 598 F.3d at 771. The opinion then quoted the majority opinion in *Heller*, which stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." *Id.* (quoting *Heller*, 554 U.S. at 626). Based on this reasoning, the panel in *Rozier* concluded that § 922(g)(1) was "a constitutional avenue to restrict the Second Amendment right of certain classes of people." *Id.*

The majority opinion in *Bruen* did not reference § 922(g)(1). Instead, it struck down as unconstitutional a New York firearm licensing regime. *Bruen*, 597 U.S. at 8-10, 32. In doing so, the *Bruen* majority held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and that "[t]o justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17. Defendant incorrectly reasons that when *Bruen* outlined this "history-based methodology," it abrogated any prior precedents (such as *Rozier*) that did not apply such a methodology. This logic is off the mark, and if implemented, would lead to significant instability in the law. For example, Defendant's argument would mean that whenever the Supreme Court modified any legal framework (for example, regarding First Amendment law), all previous decisions that did not apply that newly modified framework would be abrogated. This approach would be wholly unworkable. Simply put, *Bruen* did not clearly overrule *Rozier*, nor did it eviscerate or demolish *Rozier*'s core components. Therefore, *Bruen* did not undermine *Rozier* to the point of abrogation.

6

The same is true of *Rahimi*. The majority opinion in *Rahimi* did not reference § 922(g)(1). Instead, it upheld as constitutional the application of § 922(g)(8) to the defendant in that case. Section 922(g)(8) bans firearm possession by individuals who are subject to a restraining order that "contains a finding that an individual poses a credible threat to the physical safety of an intimate partner." *Rahimi*, 602 U.S. at 690. The majority based this holding on its application of the two-step *Bruen* framework, highlighting historical analogs to this type of firearm regulation as well as the Nation's regulatory tradition. *See id.* at 693-700. Indeed, the majority rejected:

> the Government's contention that [Defendant] may be disarmed simply because he is not "responsible." "Responsible" is a vague term. It is unclear what such a rule would entail. Nor does such a line derive from our case law. In *Heller* and *Bruen*, we used the term "responsible" to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right. *See, e.g.*, *Heller*, 554 U.S. at 635; *Bruen*, 59 U.S. at 70. But those decisions did not define the term and said nothing about the status of citizens who were not 'responsible.' The question was simply not presented.

*Id.* at 701-02 (some citations omitted).

*Rahimi* did nothing to eviscerate or demolish the core components of *Rozier*. The majority in *Rozier* did not use the term "responsible" or any phrase like it, but instead referenced the unchallenged and unremarkable proposition that a felon's "Second Amendment right to bear arms is not weighed in the same manner as that of a law-abiding citizen, such as the appellant in *Heller*." *Rozier*, 598 F.3d at 771. *Rahimi* therefore does not come close to clearly abrogating this prior-panel precedent in the Eleventh Circuit. Indeed, even though *Rahimi* is not controlling, it actually provides some support for the constitutionality of § 922 bans on dangerous individuals possessing firearms. "As the *Rahimi* majority explained, disarming certain classes of people traces its roots from a pre-common-law English legal tradition which persisted into the founding era regimes." *United States v. Hill*, 2025 WL 1094253, at *3 (M.D. Ga. Apr. 11, 2025) (citing *Rahimi*, 602 U.S. at 693-98).

Furthermore, the Supreme Court's GVRs in *Dubois*, *Kirby*, and *Jones* (as well as *Whitaker v. United States*, 2025 WL 581590 (Mem.) (2025) and *Rambo v. United States*, 2025 WL 581574 (Mem.) (2025)) are not decisions on the merits and therefore do not undermine this prior panel precedent. *See Lawrence v. Chater*, 516 U.S. 163, 167 (1996) ("a GVR order conserves the scarce resources of this Court that might otherwise be expended on plenary consideration . . . [and] assists this Court by procuring the benefit of the lower court's insight *before* we rule on the merits") (emphasis added). Indeed, the Supreme Court has rejected attempts by parties to use a GVR as support for a particular argument, emphasizing that a GVR is not a decision on the merits. *See Tyler v. Cain*, 533 U.S. 656, 666 n.6 ("We also reject a party's attempt to find support in our disposition in *Adams v. Evatt*, 511 U.S. 1001 (1994). In *Adams*, we vacated an opinion . . . and remanded for further consideration in light of [a recent Supreme Court case]. Our order, however, was not a 'final determination on the merits.'") (citations removed).

Therefore, based on *Rozier*, the prior-panel precedent rule controls here. "As a district court bound to follow the Eleventh Circuit's controlling precedent, it is not for [this] [c]ourt to decide whether *Bruen* may ultimately be held to abrogate *Rozier* – in either a facial or as-applied challenge. 'That question can only be answered by the Supreme Court or [the Eleventh Circuit] sitting en banc.'" *United States v. Pettway*, 2024 WL 231843, at *6 (S.D. Ala. Jan. 22, 2024) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003)). Because *Rozier* has not been clearly overruled or undermined to the point of abrogation, this court is bound by that decision's holding that § 922(g)(1) does not violate the Second Amendment under a facial challenge.

**IV.     Conclusion**

Although the court indicated that the "GVRs cast the legal status of § 922(g)(1) into question" and suggested that one solution for this situation could be to "stay this case and await the Eleventh Circuit's decision(s)" (Doc. # 29 at 1-2), both parties have stated that they "agree that a stay is unnecessary and request[] that this Court enter an order on Mr. Wallace's Motion to Dismiss." (Doc. # 30 at 1). Therefore, and for the reasons discussed above, Defendant's Motion to Dismiss the Indictment (Doc. # 25) is **DENIED**.

The parties **SHALL** meet and confer and, on or before **May 6, 2025**, advise the court of the next steps to be taken in this case.

**DONE** and **ORDERED** this April 22, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE